Next case is Appeal Number 2011-1633, Gang v. Boston Scientific. Appeal Number 2011-1633, Gang v. Boston Scientific. Mr. Homer, you may proceed. Thank you. Good morning, Your Honors, and may it please the Court. The one issue before the Court in this case is whether or not the district court properly included the requirement that connecting struts be unattached to each other. In its construction of the term connecting strut column. That specific issue, whether or not connecting struts must be unattached, formed the basis for the stipulation of non-infringement and the summary judgment with respect to Dr. John's contract claims based on that alleged infringement. A straightforward application of this Court's decision in Phillips and the cases that follow show that the importation of that unattached requirement into the claims was improper. What those cases teach is first to look to the plain and ordinary meaning. Boston Scientific argues in this case that the term connecting strut column was a term of art at the time the application was filed. But it points to no evidence that that was the case. And it further argues that that term of art at that time had a specific meaning that required connecting struts to be unattached. But again, there's no evidence from 1996 when the application was filed that that was the case. And so... Dr. Humphrey, one of the things that is puzzling me a little bit and challenging my review here is that it seems to me that some of the terminology here is a bit abstract. It's hard to discern the difference between an expansion strut and a connecting strut column. And that the labels, to some extent, seem to be a bit arbitrary and not particularly accurate or definitive with respect to a particular structure. So help me discern why it's proper to call some things expansion struts and other things connecting struts when they're both structures that expand when the balloon is expanded and hold their position to hold the artery out and promote the flow of blood. Help me discern how to distinguish between an expansion strut and a connecting strut. Your Honor, what the 021 patent, for example, one of Dr. Jones' patents in this case teaches is that the expansion columns and the expansion struts primarily perform the function of providing sufficient support for the vessel wall so that it doesn't collapse after the procedure is done. Don't the connecting struts also do that? Yes, they do. But their primary function isn't that. Their primary function is to provide flexibility for the stand so that when it's inserted, it is not so rigid that it tears the vessel wall or snaps. And so it's not a binary question of only one purpose being carried out by a connecting strut. It's primary purpose, the reason it's there, is to provide that flexibility. But if the district court had construed connecting strut column to be a flexible strut column, would that have been all right? I'm trying to decide whether – to what extent is the district court at liberty to add things to the definition? And where do we draw the line here? The district court, as Phyllis teaches, is at liberty to elaborate on specific words in a claim consistent with the teaching in the specification about what the invention is and how it works. And so adding some explanatory information, for example, flexible, which shows up consistently through the specification, is – well, may be appropriate in that case. So that would be appropriate because it appears consistently throughout and is a sort of art-recognized definition? Well, I wouldn't say because it's an art-recognized definition. I think it's because if one looks at the totality of the O21 patent, for example, one sees figures that show the structure. And a description of the elements in those figures that says many times throughout the specification that the connecting struts provide that flexibility. In fact, the specification goes on to talk about how the dimensions and the design of the struts, the connecting struts, might be modified to enhance or reduce that flexibility. And then those elements that are being discussed in the text show up in the claims. And so in terms of the different components of a connecting strut in terms of the claim requirements. Isn't that what the district court did here in basically recognizing from the specification and from all the prior art references that the thing that distinguishes a connecting strut from an expansion strut is the fact that the connecting strut elements are not connected to each other? No. Actually, what the district court did in this case is it took from the figures elements that are never described in the specification or aspects of a connecting strut that were shown in the exemplary figures but never discussed, never called out by Dr. Jung as somehow bearing on his invention and imported that into its construction. Well, I'm not sure. I found the briefs very confusing for some of the same reasons that Judge Lynn is addressing. But it seems to me that the stipulation that we got here doesn't resolve the difference between you and your opponent as to whether the structure we're talking about here is a connecting strut column or an expansion column. There's a difference between you. You say it's a connecting strut column. They say, oh, no, no, this is an expansion strut column. I don't understand that the stipulation resolves that dispute. What I understand the stipulation to say is that if you are right that it's a connecting strut column, there's non-infringement because it doesn't satisfy any kind of tax limitation. Is my description of what happened correct? It's close, Your Honor. So what the stipulation resolves is that if the court's instruction or the requirement that connecting struts be unattached to each other, then Dr. Jung cannot show infringement and therefore there's no question that… The stipulation doesn't resolve whether this is a connecting strut column or an expansion column. That's correct, Your Honor. That's a factual dispute between the parties. And it's one that is raised in various ways in Boston Scientific's brief. But frankly, it's a factual question as to whether or not the microelement, which is what that structure is called by Boston Scientific, whether it, which is narrower than the macroelement, is sufficiently strong and of sufficient dimensions and overall sufficient design to carry out the function of an expansion column. Let me try a slightly different take on it. I share my colleague's puzzlement about both the terminology and exactly what it is we're dealing with here. For one thing, this is an enormously crowded art field and looking at all of the prior art and then looking at this invention, I would be hard-pressed maybe because I don't actually have the physical things in front of me. I'd be hard-pressed to understand what all these distinctions work out. But let me see if I understand the physiology of the problem. The trial court said that these connecting struts, whichever label you want to put on them, have to be unattached to each other. Correct. And your argument is, no, there's nothing in the patent, either in the written description or the claims, that specifies that. That requires that. And I think that's true. As near as I can tell from reading the record, what you say about that is true. But you conclude from that that, therefore, they could be attached, and they conclude from the same absence of clarification that, no, they have to be unattached. The negative, their argument is, the negative proves the positive. Help me understand this. Assuming your struts are attached to each other, isn't there a problem with the expansion of the stent? That is to say, these struts need to be able to open up, don't they? Move away from each other. So, if they are attached firmly, if by attached we mean fixed attachment, I don't understand how, when the stent is expanded, you would have a problem with these connecting struts not being able to open up. Am I misunderstanding the entire concept? No, Your Honor. This is not my field of expertise, as you can tell. You're not misunderstanding the issue. But that issue just depends on the design of the connecting struts. So, the connecting struts have curvature, and the micro-elements are curved. They designed a connecting strut that has all those curves in it and, therefore, can expand. Therefore, it can expand, but also... Did Dr. Jang design such a strut? Yes, in fact... It looks to me like his struts were more horizontal rather than curved. His struts are, in the drawings, are horizontal, although they're not linear. But in the O21 patent, column 16, lines 39 to 49, Dr. Jang notes that the design can be varied in many ways, one of which is that the connecting struts can be curved. And so, he specifically calls out the curvature in the specification to say that this is another way that it can be designed. And from this, you deduce that they don't need to be unconnected. There's not a direct correlation, Your Honor. But the curvature is one way to avoid the issue that Your Honor raised, which is that to perform the function that they have in this design, the connecting struts need to be able to expand longitudinally. Right. They also have to be able to... Expand radially. Expand radially. And so, these variations in design and curvature help achieve that. I see I've used up my beginning time. If I've answered your question... You've answered my question. Thank you. Thank you. Very good. Very good. Thank you. Mr. Wolfe, good morning. Good morning, Your Honor. You may proceed. May it please the Court, my name is Matthew Wolfe of the Boston Scientific Corporation. Your Honors, the analysis we should begin with... Can I begin with something else? Sure. In J860, I'm trying to understand what the parties stipulated. Yes, Your Honor. And the way I read paragraph 19, tell me if I'm wrong. It says the parties are to the extent that the microelements and straight segments in red above are considered a connecting strut column. The alleged connecting struts, blah, blah, blah, don't satisfy the unattached limitation. So, if I understand the stipulation correctly, it doesn't resolve the question of whether the structure we're talking about here is a connecting strut column or an expansion column, which is another difference between the parties, but that's not before us, is it? It's not, Your Honor. The point of that phrase is if it's not considered a connecting strut column, we also don't infringe because then the other components are shared. Sure, that's an argument that you have, but it's not one that's before us, is it? Right. So, the infringement... That's correct. Correct. That's correct. The infringement allegation was this is what the connecting strut column is, this meets the limitation for the claim. Our argument is that's not a connecting strut column under a proper construction, the construction the district court ordered. Therefore, if the court is affirmed, if the district court is affirmed, there is no infringement, as everyone agrees. If not, presumably we go back below and they then have to argue that that is a connecting strut column that can be, and then we're back... You argue that it's not. Right. It's an expansion column, but that's not here today. Correct. You are correct. And what you have stipulated to is that if it is a connecting strut column, there's no infringement because it doesn't satisfy the unattached limitation. Correct. Correct, John. And this goes to where I was starting, which is the proper analysis here starts with the same place a stent designer starts, which is an expansion column. And an expansion column is the one thing that every stent must have. In fact, most early stents only had expansion columns. An expansion column is nothing more than a ring, a zigzag ring. And that's what the district court found, and that's not appealed right now. It's a tubular structure or ring, and it expands and props the artery open. If you are a tubular structure that expands and supports the artery, you are an expansion column. Well, maybe so, but that's not the issue before us today. But what the district court did is define connecting strut column with reference to that. And so unattached to each other is another way of saying not a ring. That if you are attached to each other, if you are a microelement, you become a ring, and therefore you're not a connecting strut column. I don't understand that, and I don't get it. Show me where he said that. What the court said is that what Dr. John has acknowledged in his patents and his primer, that the definition of- The problem is we've got a stipulation that if it's a connecting strut column, it doesn't infringe because it doesn't satisfy an unattached limit. Correct. So the question is, if you've got a connecting strut column, and we have to assume for purposes of this appeal that this structure is a connecting strut column, right? No. No? No. In fact, what you have to ask is if- No, absolutely not. What would make that column- Tell me a minute ago that the stipulation is based on saying we assume for purposes of this stipulation it's a connecting strut column, and the question then is, does it satisfy the unattached limitation? No, we're assuming that the allegation is that that's a connecting strut column. Sure. We're assuming that that's the allegation, and then what the stipulation says, if that allegation is correct, it doesn't satisfy the unattached limitation. I believe what the stipulation said is, if the district court's construction is accepted, then we all agree that allegation can't be correct. Well, I'm reading from paragraph 19. It says, the parties agree that to the extent that this structure is considered a connecting strut column, the alleged connecting struts are attached to each other. The critical point, Your Honor, is the as Dr. John claims. I understand. That's what his claim is. You're saying if he's right about that claim, then it still doesn't infringe because it doesn't satisfy the unattached limitation. You're not agreeing that it's a connecting strut column. Absolutely. We haven't done that. Correct. Because that issue also is not before us today. Your Honor, I think that the allegation by Dr. John is that what we call microelements, and I'm holding up page 19 from our brief, what's in red here, what we call microelements is another expansion column, not a connecting strut column. The allegation below in the infringement contentions by Dr. John was that's a connecting strut column. Correct. And for purposes of this appeal, we have to assume that it is because that's what the stipulation says. I think the stipulation just says that that's what Dr. John claims, and the agreement is that if the district court's claim construction is accepted, then both parties agree that it can't be a connecting strut column. In other words, both parties agree that Dr. John's allegation is such that there's no infringement. Correct. That's your point. That's correct, Your Honor. And that's the focus of this appeal. That's correct. That's correct. The allegation is that it's a connecting strut column. Right. So we assume for purposes of this appeal it's a connecting strut column. I don't believe that's correct, Your Honor. I believe we assume because if the district court's construction is accepted, both parties agree it's not a connecting strut column. So we're not assuming, we're acknowledging that that's the focus of the dispute. The focus of the dispute is on the microelements, what he alleges, what Dr. John alleges to be a connecting strut column. Both parties agree that if the district court's construction is accepted, that Dr. John's allegation that that is a connecting strut column cannot hold, and that ends the lawsuit. And it turns on the question of claim construction with respect to whether the connecting elements must be connected to each other or unattached to each other. Correct. And that's the only issue before us. That's the only issue that has been raised by time. Correct. You designed a stent that has all the curvatures, that are connected but they're curving so that they will expand. Correct. Right? Yes. And again, if I may hold off, my apologies. It's the right hand. Yes. And so for various reasons, the stent designers felt that to have different sized expansion columns would improve the flexibility. As you go through the arteries, you have to work your way like this. And having different sized expansion columns, the engineers believe, would improve what's called the tortuosity. So the bottom line is Dr. Jang says you stole his invention and your changes are irrelevant. Well, we didn't steal it because we're licensed to it. Right. We would owe him a royalty. Your design around didn't work is what you say. Except it's not a design around at all because what's read here, the micro-elements, are not connectors by any logic, by any understanding of the prior art. What he's done is taken what anyone, and to be clear, the only testimony of a person who's skilled in the art. Well, it may not be connectors, but where does the stipulation say that that's the issue before? I believe that's what the stipulation is. Where? Thus, because the district court's claim from paragraph 19. Yeah. Thus, because the district court's claim construction order requires connecting struts to be unattached to each other, Dr. Jang, therefore, cannot prove that the express debt infringes any assertive claim of the 021 and 743 patents because Dr. Jang cannot show that DFC spent practices the connecting strut column limitation. Right. And that follows the sentence that I was flowing your attention to earlier. It says to the extent that this structure is considered to be a connecting strut. So, the stipulation appears to be saying to the extent that he's right, that this is a connecting strut column, it still doesn't infringe because it doesn't satisfy the unattached limitation. I'm not sure. I think considered should probably properly have been alleged. I think alleged would have cleared this up. To the extent that what the allegation below is that this smaller microelement expansion column is, in fact, connectors, then we, and then we read the rest of the paragraph. So, considered was not meant to suggest that we're agreeing. No, of course you're not agreeing. But it's the premise of the stipulation saying to the extent that these are connecting strut columns, there's no infringement because they are not unattached. To the extent that Dr. John alleges that these are the connecting strut columns, that can't be true. They can't be connecting strut columns because they're unattached. I'm having trouble understanding why you are not simply agreeing with Judge Dyke and saying the appeal is all about to the claim construction and whether or not the district court was correct in construing connecting strut columns to mean that there are struts that are unattached to each other. It seems to me that's the only thing that's before us that doesn't foreclose any argument on infringement. Your Honor, I agree completely with what you just said. So, Your Honor, if that was what you were intending to say, I apologize for misunderstanding you. That is exactly the posture we are in at the moment, the way you just phrased it, Your Honor. Well, then, what is your response, then, to the appellant's argument that the district court read a limitation into the claim when that limitation should not be written? You do agree in answering that that there is nothing in the written description or in the claim itself that specifies this question, right? No, I don't, because we believe that the term connecting strut column has meaning to one skill in the art. We submitted a declaration below. The court disagreed with us. The court actually felt like, or at least implicitly disagreed, felt like it was an issue of lexicography, hence its analysis. But in this case, the lexicography and what we allege to be one skill in the art are one and the same thing. So, where in the record do we find this affidavit that says that there is a home of Dr. Squire? It is at 1441 through 1443. It's Dr. Squire's declaration. Let's narrow it down. Sure. It's 1442 and 1443. And this is the declaration of Dr. James Squire. Is there a particular paragraph? Yeah, it's 21 through 27. First, he lays out the distinction between expansion columns and then connecting columns, and then states that his reading of the John Patton reveals that John is following the ordinary meaning of the term, Okay, but what is evidence that Stenth engineers understood that at the time? He is a Stenth engineer. I understand, but in Phillips, we said, you know, the statements by experts about what they think is not so relevant. They should refer us to contemporaneous documentation that supports what they think. He doesn't do that, right? He doesn't do that in this section, correct. And that's why we in our briefs laid out all of the prior art references. And I have, they weren't available to him? Well, at the time, the posture of the case was that there were limited declarations. And the question simply is, what do you want to understand the term to mean? That was the question that was posed to him. And he said, I understand that to mean X, Y, and Z. And then we supported that in our briefing with the prior art that said Dr. Squire's understanding is one of skill in the art is consistent with. So we took the burden of talking about how the prior art was consistent with Dr. Squire's testimony. This is kind of a substitute lawyer argument for putting it in the affidavit. Well, I'm not, as the law has evolved, sitting here today, six years later, we clearly would have done it, structured it differently. At the time, it wasn't quite so clear, in fairness to the folks that put the brief together, that that was an improper division of responsibility. That the experts say, this is what I understand the term to mean. And then to say, for the lawyers to say, and the prior art supports that. I mean, now, of course, we would put them in the same declaration. I want to just emphasize two things that I think are very important. When I took informal logic in college, begging the question meant assuming what is to be proven. And that is exactly what Dr. John's argument is. He talks about importing limitations or narrowing the term. That presupposes that there's a broader understanding out there of connecting struct column. And that somehow we're trying to narrow it by pointing to the prior art. Our point is, that's exactly not true. That the pre-existing understanding of connecting struct column is precisely consistent with what the district court found. And is precisely consistent with the way Dr. John depicts it throughout his patents. That they're unattached. That they're unattached. The minute you turn them into a ring. You attach them and turn them into a ring. Anybody in the prior art, our expert, anybody, including Dr. John, would say, that's no longer a connecting struct column. That's a ring, and therefore an expansion column. That's the distinction. If it's a ring, it's an expansion column. If it's something less than that, we can start to ask the question, are they connectors? That's what the district court was doing, what they did. The second point, is there anything in the record, other than the declaration you've referred to on 1442, 1443, that supports that argument? Absolutely. The patent itself talks about, it says, expansion column or ring. Defines them co-extensively. We have his primer at 1656. This is an unusual case. Granted it was a few years after, but it's retrospective looking. Where Dr. John sat down and wrote to Boston Scientific, a detailed document, where he said, this is what these terms mean in the art. And he explained what expansion columns were and connectors were. That's at JA 1656 and 1658. The last point I'd make with my, I guess I don't have any time left. I would just note, is that there was lots of discussion about functionality in counsel's argument. The constructions, including the constructions that aren't on appeal, say nothing about functionality. The only functionality is connecting. Rings. If you have a ring, by definition you have an expansion column, not a connecting sort column. Thank you. Thank you very much. Mr. Hummery? Mr. Hummery, for those of us who are not medical engineers, can you say in one or two succinct sentences what's wrong with his argument that if these connectors are attached, there's some sort of an expansion ring and they are not understood as connectors. What's wrong with that argument? Two things are wrong. One, first, from a functional standpoint. That would depend upon the design of the connecting struts. So conceivably you could design connecting struts that would behave in that way. You wouldn't want to, but you could. But conceivably you can design struts that don't, that have proper reflection and proper design so that they do expand. Secondly, if that were the case, Your Honor, there would be evidence of it. And there would be evidence of it from the time that Dr. John filed his patent application, not from ten years later when an expert retained for litigation spelled out in lawyerly fashion the arguments of counsel. And, in fact, just one point that came up during that argument as to the declaration. In the red brief, that declaration is not actually offered to support the idea that this was a term of art back in 1996. It's not cited in that section. It's cited in the later section. I thought the reason was because the declaration is framed in the present tense, not in the past tense. I guess I was wrong, but that's another reason why it doesn't show, doesn't support what needs to be supported here for Boston Scientific's argument to succeed. One figure from the patent I wanted to point out to address the issue that Your Honor raised earlier is Figure 3D. The Figure 3D from the patent, which shows that it shows behavior when the column is expanded. And it shows that both the connecting strut column and the expansion column collectively form the stent and form the portion of the stent that touches the vessel walls. Let me move on to another issue raised during my colleague's argument, which is that somehow Dr. Jong's writing from six years after the patent was filed resolves this whole question. It doesn't. And the reason is that it's exactly the same reason that the patent itself doesn't resolve it. And that's because Dr. Jong's treatise, although it talks about the role of an expansion column and the role of a connecting strut column, it doesn't say that connecting struts cannot be attached to each other either. It's left unsaid. And so, both from a timing perspective and from a substantive perspective, that doesn't support Boston Scientific's argument either. In short, the evidence under a proper Phillips analysis, the evidence does not support the addition of this requirement to the claimant. I see that my time has expired, so thank you, Your Honor. Thank you very much. At this time, both counsel, the case is submitted.